

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

Rod J. Rosenstein
United States Attorney

Paul E. Budlow
Assistant United States Attorney
Paul.Budlow@usdoj.gov

36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201

DIRECT: 410-209-4917
MAIN: 410-209-4800
FAX: 410-962-3091
TTY/TDD: 410-962-4462

July 3, 2013

Joseph Balter, Esquire
Office of the Federal Public Defender
100 South Charles Street
Tower II, Suite 1100
Baltimore, Maryland 21201

    Re:    United States v. Robert J. Marzola
           Criminal #: ELH-12-0607

Dear Mr. Balter:

       This letter confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by Monday, July 8, 2013, at 5:00 pm, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

       1.    The Defendant agrees to plead guilty to Count One of the Indictment now pending against him, which charge him with Production of Child Pornography in violation of 18 U.S.C. § 2251(a). The Defendant admits that he is, in fact, guilty of this offense and will so advise the Court.

### Elements of the Offense

       2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

1

      a. The Defendant knowingly employed, used, persuaded, induced, enticed or coerced a minor to engage in sexually explicit conduct;

      b. For the purpose of producing a visual depiction of such conduct; and

      c. The Defendant had reason to know that the visual depiction would be transported in interstate commerce, said visual depiction was transported in interstate or foreign commerce, or the materials used to produce the visual depiction were transported in interstate commerce.

Penalties

  3. a. The maximum sentence provided by statute for production of child pornography is as follows: not less than fifteen (15) years and not more than thirty (30) years imprisonment, $250,000 fine, and supervised release for life.

    b. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

    c. The defendant understands and agrees that as a consequence of his conviction for the crime to which he is pleading guilty, he will be required to register as a sex offender in the place where he resides, where he is an employee, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may subject him to new charges pursuant to 18 U.S.C. § 2250.

Waiver of Rights

  4. The Defendant understands that by entering into this agreement, he surrenders

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

2

certain rights as outlined below:

        a.     If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

        b.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

        c.     If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

        d.     The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

        e.     If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

        f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

        g.     If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

        h.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The

Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto, and to the following applicable sentencing guidelines factors:

Count 1: Production of Child Pornography - December 28, 2011):

    a. Pursuant to U.S.S.G. § 2G2.1(a), the base offense level is **32**.

    b. Pursuant to U.S.S.G. § 2G2.1(b)(1), there is a four **(4)** level increase because the victim in this case was under the age of 12 at the time of the offense.

    c. Pursuant to U.S.S.G. 2G2.1(b)(2)(A), there is a two **(2)** level increase because the offense involved the commission of a sexual act or sexual contact.

    d. Pursuant to U.S.S.G. § 2G2.1(b)(5), there is a two **(2)** level increase because the minor was in the custody, care, or supervisory control of the defendant.

    e. Thus, the adjusted offense level for Count One is **40**.

Relevant Conduct: Production of Child Pornography - April 2, 2012:

    f. Pursuant to U.S.S.G. § 2G2.1(a), the base offense level is **32**.

    g. Pursuant to U.S.S.G. § 2G2.1(b)(1), there is a four **(4)** level increase

4

because the victim in this case was under the age of 12 at the time of the offense.

        h.        Pursuant to U.S.S.G. 2G2.1(b)(2)(A), there is a two **(2)** level increase because the offense involved the commission of a sexual act or sexual contact.

        i.        Pursuant to U.S.S.G. § 2G2.1(b)(5), there is a two **(2)** level increase because the minor was in the custody, care, or supervisory control of the defendant.

        j.        Thus, the adjusted offense level for production of child pornography on April 12, 2012 is **40**.

Relevant Conduct:  Production of Child Pornography - July 10, 2012:

        k.        Pursuant to U.S.S.G. § 2G2.1(a), the base offense level is **32**.

        l.        Pursuant to U.S.S.G. § 2G2.1(b)(1), there is a four **(4)** level increase because the victim in this case was under the age of 12 at the time of the offense.

        m.        Pursuant to U.S.S.G. 2G2.1(b)(2)(A), there is a two **(2)** level increase because the offense involved the commission of a sexual act or sexual contact.

        n.        Pursuant to U.S.S.G. § 2G2.1(b)(5), there is a two **(2)** level increase because the minor was in the custody, care, or supervisory control of the defendant.

        o.        Thus, the adjusted offense level for production of child pornography on July 10, 2012 is **40**.

Relevant Conduct:  Distribution of Child Pornography - June 18, 2012:

        p.        Pursuant to § 2G2.2(a)(2), the base offense level for distribution of child pornography is a level <u>22.</u>

        q.        Under § 2G2.2(b)(2), there is a two (2) level increase because the material involved prepubescent minors.

        r.        Under § 2G2.2(b)(3)(F), there is a two (2) level increase because the defendant distributed child pornography.

        s.        Under § 2G2.2(b)(7)(D), there is a five (5) level increase because the offense involved more than 600 images.

        t.        Thus, the adjusted offense level for distribution of child pornography is **31**, prior to consideration of the disputed guideline enhancement in 7a.

7.      This Office and the Defendant agree that the following facts and/or sentencing guidelines factors are in dispute:

<u>Distribution of Child Pornography:</u>

a.      Whether there should be an increase of two (2) levels pursuant to U.S.S.G. § 2G2.2(b)(6), because the defendant used a computer or an interactive computer service for the distribution of the material. Thus, the adjusted offense level for distribution of child pornography is either **31** (Defendant) or **33** (government).

<u>Grouping:</u>

b.      Whether the three incidents of production of child pornography listed above group pursuant to U.S.S.G. §§ 1B1.2 and 3D1.4. The defense will argue that the incidents group, and the government will argue the incidents do not group. The parties agree that if the Court finds that the three incidents of production of child pornography do not group, the incidents count as three units.

c.      If the Court applies the enhancement in 7a for the use of a computer, the offense of distribution of child pornography counts as one-half unit under U.S.S.G. §3D1.4 (because it is 5 to 8 levels less serious than the group with the highest level – 33/40).

d.      Depending on the Court's rulings in 7a and 7b, the total offense level, after applying U.S.S.G. §§ 1B1.2 and 3D1.4, is one of the following:

    i.   40   (incidents of production group, use of a computer does not apply);

    ii.  41   (incidents of production group, use of a computer does apply, increase of 1 level for ½ unit);

    iii. 43   (incidents of production do not group, use of a computer does not apply, increase of 3 levels for 3 units);

    iv.  44   (incidents of production do not group, use of a computer applies, increase of 4 levels for 3 ½ units).

8.      This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon your client's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office may oppose *any* adjustment for acceptance of responsibility if your client (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his

involvement in the offense; (d) is untruthful with the Court, this Office or the United States Probation Officer; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. Thus, the final anticipated base offense level is at least **38** or as high as **42** (government).

9. Except as set forth above, this Office and the Defendant agree that, with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in Chapters 2, 3, 4 or 5 of the United States Sentencing Guidelines will be raised or are in dispute.

10. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

## Obligations of the United States Attorney's Office

11. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

12. At the time of sentencing, this Office will recommend a reasonable sentence taking into consideration the adjusted U.S.S.G. level and the sentencing factors outlined at 18 U.S.C. § 3553(a).

13. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

## Waiver of Appeal

14. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

   a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

   b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

    c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

    d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

  15. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, (iii) files a motion to withdraw his guilty plea, or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Forfeiture

  16. The defendant agrees to forfeit all right, title and interest in the property seized by law enforcement authorities from his residence at 43 Seaford Avenue, Essex, Maryland on July 19, 2012. He further agrees to take whatever steps are necessary to pass clear title to those properties to the United States. Those items include, but are not limited to:

    a. Panasonic Lumix digital camera, model: DMC-TZ5, S/N: FN8FB011239;
    b. HP Laptop Pavilion dv4, S/N: CND9430VMD;
    c. HP Desktop P6000, S/N: CNX9520XWT; and
    d. 8GB Kingston SD card, S/N: FN8FB011239.

### Court Not a Party

  17. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the

Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

18. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Paul Budlow
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

7/30/13
Date

Robert J. Marzola

I am Mr. Marzola's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

7-30-13
Date

Joseph A. Balter, Esquire

10

Attachment A
Statement of Facts

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

Robert J. Marzola ("Marzola") age 30, resides in Essex, Maryland. As detailed below, between December 2011 and July 2012, Marzola sexually abused a minor and produced images of himself and the minor engaged in sexually explicit conduct.

Victim 1 is a minor male ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ During all relevant times, Marzola was unemployed, and his wife worked full time. ▓▓▓▓▓▓▓▓▓▓

Count 1: Production of Child Pornography on December 28, 2011:

On December 28, 2011, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ During a 20 minute time span just after midnight, Marzola produced 23 photographs of himself and Victim 1. The series begins with photographs of Marzola, Marzola's penis, and Victim 1. The next four photographs are of Victim 1's penis, followed by three photographs of Marzola performing oral sex on Victim 1. The last three photographs in the series are of Marzola's penis touching Victim 1's penis. The photographs were taken in the nursery of Marzola's home. Of the images described, the eleven that were of Victim 1 engaging in sexually explicit conduct were saved on the defendant's laptop computer.

Production of Child Pornography on April 2, 2012:

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ On April 2, 2012, beginning at approximately 1:45 pm, Marzola produced a series of six images of child pornography over a 4 minute span. The series begins with 4 images of Victim 1's penis (2 of which show Victim 1 fondling his penis), and ends with 2 images of Victim 1 performing oral sex on Marzola. The images were all taken in the Marzolas' bedroom using Marzola's Panasonic camera. The images were saved on the defendant's laptop computer.

Production of Child Pornography on July 10th, 2012:

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ On July 6th, 2012, Marzola produced a series of 3 photographs and one video of Marzola and Victim 1 over a one minute period. The images were found on the SD card recovered from inside the defendant's digital camera. The images are as follows: (1) a photograph that is a close up of a Victim 1's penis, (2), a photograph depicting Marzola's hand wrapped around his penis, in which Victim 1's legs can be seen touching Marzola, (3) a video file, 6 seconds in length, depicting Victim 1 masturbating, Marzola's legs are visible, during the video, and two voices can be heard on the video, Marzola's, and Victim 1's, and (4) a photograph depicting the same conduct described in the preceding video. The images and video were all taken in Marzola's bedroom using Marzola's Panasonic camera.

Victim 1's Disclosure

After the investigators discovered the images of Marzola's abuse of Victim 1, Victim 1 was taken to the Baltimore County Child Advocacy Center where he was forensically interviewed. Victim 1 was reluctant to provide any information about his contact with Marzola, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Victim 1 ultimately disclosed the he and ▇▇▇▇▇▇ played a game, which included Marzola touching and kissing Victim 1's penis, and Victim 1 touching his own penis. Victim 1 said the "game" began during the summer of 2011, and continued through the summer of 2012. Victim 1 also said that Marzola used a camera to take pictures of the game. Victim 1 also stated that Marzola told him "never" to tell anyone, or that they would be mad at Victim 1. Throughout the interview, Victim 1 told the interviewers not to tell anyone about his disclosure.

Distribution of Child Pornography

On June 18, 2012, a detective with the Baltimore County Police Department used a computer to access the peer to peer network and observed that Marzola had files of containing child pornography available for download. The investigator downloaded a video file, titled "andy's friend1 2of2 bibcam - 2 boys having fun (andy and friend).mpg." The video depicted two nude males masturbating each other.

On July 19, 2012, detectives from the Baltimore County Police Department searched Marzola's residence at 43 Seaford Avenue, Essex, Maryland, pursuant to a search warrant. Marzola resided at the home with his wife and 5-month old daughter, who were home at the time. Victim 1 was also present at the time of the search warrant.

During the search warrant, investigators seized Marzola's digital camera, desk top computer, laptop computer, and an SD card. The items are further described as:

      a.    Panasonic Lumix digital camera, model: DMC-TZ5, S/N: FN8FB011239;
      b.    HP Laptop Pavilion dv4 , S/N: CND9430VMD;
      c.    HP Desktop P6000, S/N: CNX9520XWT; and

        d.        8GB Kingston SD card, S/N: FN8FB011239 (from inside the camera).

Marzola was the sole user of the laptop, and he used the desktop computer as a server.

During a forensic review of the seized items, images and videos of child pornography were found on the laptop computer, the desktop computer, and the SD card. The images and videos that Marzola produced of Victim 1 were found on the defendant's laptop, inside the folder "New folder". The folder also contained 18 videos of children engaged in sexually explicit conduct. The forensic review of the laptop revealed that the file: "andy's friend1 2of2 bibcam - 2 boys having fun (andy and friend).mpg" was downloaded by the defendant using a peer to peer program prior to the undercover detective's download from the defendant.

Marzola's Panasonic digital camera, which was used to produce the images of Victim 1 described above, was manufactured outside of the United States. The images were therefore produced using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer.

I have reviewed the foregoing statement of facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as part of my plea agreement with the government in this case.

                                                                       _____
                                                                       Robert J. Marzola

I am Mr. Marzola's attorney. I have carefully reviewed the statement of facts with him.

                                                                       _____
                                                                       Joseph A. Balter, Esquire
                                                                       Counsel for Robert J. Marzola